91 Cal.Rptr.2d 20 (1999)
76 Cal.App.4th 879
Linda HOVANEC, Plaintiff and Appellant,
v.
VAN NUYS AIRPORT RESTAURANT CORPORATION, Defendant and Respondent.
No. B122779.
Court of Appeal, Second District, Division Four.
December 3, 1999.
Review Denied March 22, 2000.[*]
*22 Stephan Math, Woodland Hills, for Plaintiff and Appellant.
Ashley A. Baron, Anaheim, Snell & Wilmer, L.L.P., Phoenix, AZ, Richard A. Derevan, and Athena Roussos, for Defendant and Respondent.
*21 CHARLES S. VOGEL, P.J.

INTRODUCTION
Plaintiff and appellant Linda Hovanec appeals from a judgment of dismissal entered after the trial court sustained a demurrer to her second amended complaint without leave to amend. The trial court sustained the demurrer on the ground that plaintiff had failed to file an administrative complaint with the Department of Fair Employment and Housing ("DFEH") in a timely fashion as a prerequisite to filing the present civil action. (See Gov.Code, § 12960.)[1] We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
Plaintiff alleged in her second amended complaint that she had been employed by 94th Aero Squadron Restaurant ("defendant") beginning in April 1993.[2] She informed defendant in September 1993 that she had previously worked at Black Angus Restaurant. During her employment at Black Angus, Mike Barnitz had been her manager; his actions led plaintiff to file a complaint of sexual discrimination against him. Subsequent to her employment by defendant, Barnitz became employed by defendant. Shortly thereafter, plaintiff was terminated for the stated reason that she had failed to inform defendant of her previous employment at Black Angus. Plaintiff was informed by letter dated March 31, 1995, that her employment was terminated effective December 29, 1994. Plaintiff alleged that because she was on a disability leave at the time, this notice was the first communication she received with respect to her termination. Plaintiff further alleged that the real reason she was terminated was in retaliation for previously filing a claim of sexual discrimination against Barnitz, in violation of section 12940. On March 11, 1996, plaintiff filed with DFEH a charge of discrimination on the basis of sex and retaliation. She received a notice of right to file a private lawsuit (§ 12965, subd. (b)) from DFEH on March 15, 1996.
Defendant demurred to the second amended complaint on the ground that plaintiffs administrative complaint, filed March 11, 1996, was not filed within one year of her termination on December 29, 1994. Defendant's counsel submitted a declaration requesting the court to take judicial notice of plaintiffs complaint filed with the DFEH on November 14, 1995, alleging discrimination based on her disability and DFEH's September 13, 1996, notice of right to file a private lawsuit.
*23 At oral argument, the trial court took judicial notice as requested and sustained defendant's demurrer without leave to amend. Judgment in favor of defendant was entered and this timely appeal followed.

DISCUSSION

I.
The Fair Employment and Housing Act ("FEHA") provides that "It shall be an unlawful employment practice ... [¶] ... [¶] [f]or any employer ... to discharge ... any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." (§ 12940, subd. (f).) Under FEHA, an employee must exhaust the administrative remedy provided by the statute by filing a complaint with the DFEH and must obtain from the DFEH a notice of right to sue in order to be entitled to file a civil action based on violations of the FEHA. (§§ 12960, 12965, subd. (b).) The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under FEHA. (Romano v. Rockwell Internal, Inc. (1996) 14 Cal.4th 479, 492, 59 Cal.Rptr.2d 20, 926 P.2d 1114.)
Section 12960 provides that "No complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred; except that this period may be extended for not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence."
Defendant asserts on appeal as it did in the trial court that the holding in Romano v. Rockwell Internal, Inc., supra, 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114, is controlling here. In Romano, the plaintiff filed a complaint with the DFEH in September 1991 alleging retaliatory termination and age discrimination. He had been notified by his employer in December 1988 that he was going to be discharged, but his termination was not effective until May 1991. The employer took the position that the plaintiffs cause of action accrued when he was notified of the intended termination and he had one year from that date to file an administrative complaint. However, the Supreme Court held that "by the terms of Government Code section 12960 the limitations period applicable to administrative claims begins to run `after' the unlawful employment practice has `occurred.' If the administrative complaint must be filed within one year `after' the unlawful practicehere, a discharge'occurred,' then for the purpose of that complaint, the administrative cause of action must accrue and the statute of limitations must run from the time of actual termination. It would not run from the earlier date of notification of discharge, because on that date the unlawful practice (that is, the discharge) had not yet `occurred.'" (Id. at p. 493, 59 Cal.Rptr.2d 20, 926 P.2d 1114.)
The holding in Romano does not dictate the result here, where the discharge occurred several months before plaintiff was notified of it. "`Language used in any opinion is of course to be understood in the light of the facts and the issue then before the court, and an opinion is not authority for a proposition not therein considered.'" (Aguilar v. Avis Rent A Car System, Inc. (1999) 21 Cal.4th 121, 143, 87 Cal.Rptr.2d 132, 980 P.2d 846, quoting Ginns v. Savage (1964) 61 Cal.2d 520, 524, fn. 2, 39 Cal.Rptr. 377, 393 P.2d 689.)
We do find applicable, however, the portion of Romano which interprets the statutory language of sections 12940 and 12960, when read together, to require that an administrative complaint be filed within one year from the date on which an unlawful discharge occurred. Without dispute, *24 plaintiff here was discharged effective December 29, 1994. At issue is whether defendant's failure to notify plaintiff of her termination until March 1995 has any effect on the time within which she was required to file an administrative complaint. Plaintiff asserts that under the circumstances of this case the statute of limitations should be equitably tolled during the time plaintiff had not been placed on notice of her termination. To resolve this issue, we look to the statutory language of section 12960.
"We interpret statutory language according to its usual and ordinary import, keeping in mind the apparent purpose of the statute. [Citation.] When no ambiguity appears, we give statutory terms their plain meaning. [Citation.]" (Romano, supra, 14 Cal.4th at p. 493, 59 Cal.Rptr.2d 20, 926 P.2d 1114.) Section 12960 includes a specific provision for late discovery of the facts regarding an allegedly unlawful employment practice. It states that the one year statute of limitations from the date the alleged unlawful practice occurred "may be extended for not to exceed 90 days following the expiration of that year, if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence." Plaintiff in essence asks us to read an additional exception into the statute which would toll the running of the limitations period until a potential claimant knows of the occurrence of the unlawful practice. This we cannot do.
Here, the Legislature has specifically provided for the exceptional circumstance when late filing of a verified complaint with the DFEH is permitted. Thus, when a "person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of the occurrence," she is allowed an additional 90 days to file a complaint. Because section 12960 provides for no other exception allowing the extension of the filing period, we conclude that none was intended. "The statute explicitly incorporates the familiar rule of construction, expressio unius est exclusio alterius: where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed. (In re Michael G. (1988) 44 Cal.3d 283, 291 [243 Cal.Rptr. 224, 747 P.2d 1152]) We presume the Legislature included all the exceptions it intended to create." (Geertz v. Ausonio (1992) 4 Cal.App.4th 1363, 1370, 6 Cal. Rptr.2d 318.)
"Under the maxim expressio unius est exclusio alterius, which applies only in the event of statutory ambiguity or uncertainty, the enumeration of acts, things, or persons as coming within the operation or exception of a statute will preclude the inclusion by implication in the class covered or excepted of other acts, things, or persons. Under this rule, if a statute contains an express exception or exceptions, it will be presumed that no other exceptions were intended." (58 Cal.Jur.3d (1980) Statutes, § 115, p. 503, fns. omitted.)
If the Legislature had intended to include a broader and more flexible time line for filing a complaint with DFEH, it could have adopted an express provision to that effect. Instead, the Legislature articulated only one circumstance for excusing the filing within one year and specifically provided a very discrete period of time applicable to that exception. To conclude otherwise would allow a claimant who learns of an unlawful practice to file within the first year after discovery. That result would render the "not to exceed 90 days following the expiration of that year" clause meaningless. (§ 12960.) It is not logical that the Legislature intended any such consequence. We conclude that an additional discovery exception cannot be read into section 12960 on equitable grounds.
Williams v. City of Belvedere (1999) 72 Cal.App.4th 84, 84 Cal.Rptr.2d 658 provides instructive insight for the statutory *25 construction of section 12960. The plaintiff applied for an opening with the police department for the City of Belvedere. He was informed by letter that he had not been selected for the position. He learned 16 months later that racial discrimination may have played a part in the City's decision not to hire him, and he filed an administrative claim with the DFEH less than one month thereafter. Thus, Williams did not discover the facts indicating the City's refusal to hire him was based on prohibited racial discrimination until after the time for filing a timely administrative claim had passed. The trial court nonetheless granted a directed verdict in favor of the City on the basis that he had failed to timely file an administrative claim, and the Court of Appeal affirmed.
The plaintiff in Williams, as does the plaintiff here, asked the Court of Appeal to exercise its equitable powers and rule that the time for filing an administrative claim was tolled during the period he did not know he was the subject of discrimination. "We decline to adopt such a rule because the statute in question, section 12960, already addresses that issue.... [Citing the final paragraph of section 12960.] Thus the Legislature anticipated there may be situations where a person does not learn he was the subject of discrimination until after the one year period has passed, and it provided a remedy when that occurs: an extension `not to exceed 90 days.' Since the Legislature has provided a remedy for the problem Williams has identified, we decline to formulate a different remedy. We recognize the harshness of this statutory scheme which provides no relief for the claimant who remains ignorant of the existence of a claim until after the statutory deadline for filing the claim has passed. We are constrained, however, to leave this issue of policy to the Legislature. 'Once the Legislature has evidenced an intent to comprehensively define the contours of a particular field ... such complex policy determinations must plainly remain beyond the reach of our equitable jurisdiction.' (Pacific Scene, Inc. v. Peñasquitos, Inc. (1988) 46 Cal.3d 407, 413-414 [250 Cal.Rptr. 651, 758 P.2d 1182])" (Williams v. City of Belvedere, supra, 72 Cal.App.4th at pp. 92-93, 84 Cal.Rptr.2d 658.)
Williams involved a claim that remained undiscovered long after the one year and ninety-day time limitation of section 12960 expired and here the plaintiff was informed three months after the one year limitation commenced. That difference does not compel different results. If the statutory scheme provides no relief for the claimant who remains ignorant of the existence of a claim beyond the specified time for filing a claim, it can hardly be construed to provide relief for a claimant who learns of the existence of a claim nine months before the expiration of the specified time limitation. The Legislature has enacted an exclusive remedy for late discovery and we decline to formulate a different remedy, leaving to the Legislature this issue of policy.
The dissent asserts that the commencement of the general one year time limitation of section 12960 requires that the claimant have knowledge that the unlawful employment practice has occurred. In other words, the plaintiff must be informed or otherwise learn that she has been terminated before any time bar is triggered with respect to her present claim of retaliatory termination. In essence, this would impose a "discovery" or "duty to inform" element into the law, where none appears to have been intended. Literally, section 12960 provides that the one year limitation runs from the occurrence of the unlawful practice, and, almost parenthetically, includes a 90 day escape clause for claimants who do not discover the unlawful practice until after the expiration of the one year from the date of occurrence. Had the Legislature intended that the general one year limitation be extended until the claimant had knowledge of the occurrence of the unlawful practice, it would have declared that the one year *26 commences upon the date of discovery. Had that been the Legislature's intention, the 90 day escape clause would have been wholly unnecessary. It is axiomatic, that the Supreme Court "ordinarily reject[s] interpretations that render particular terms of a statute mere surplusage, instead giving every word some significance." (City of San Jose v. Superior Court (1993) 5 Cal.4th 47, 55, 19 Cal. Rptr.2d 73, 850 P.2d 621.)
A fundamental premise of the dissent is that "termination" cannot occur unless the fact of termination is communicated to the employee. The dissent posits that if an employer may terminate an employee who is out for long-term disability leave, the employer may simply elect the last date worked as the date of termination. The corollary of that hypothesis is that an employee may voluntarily absent himself from work for any period of time, but cannot be terminated until and unless the employer first gives notice of that fact. It is the vagaries of such circumstances that compel the conclusion that the Legislature intended to impose an absolute time limitation not dependent on notice or discovery.[3]
Here the employee ambiguously alleges she was on disability leave at the time she received the letter notifying her that she had been terminated on December 29, 1994, but she does not dispute the fact or date of termination. If plaintiff contends she was not terminated on the date indicated by the defendant, she could have so alleged. Here, plaintiff made no such allegation and did not propose an amendment to do so.[4]

II.
Plaintiff contends that the allegations of her first amended complaint support the application of the doctrine of equitable tolling, relying on the case of Addison v. State of California (1978) 21 Cal.3d 313, 146 Cal.Rptr. 224, 578 P.2d 941. The defendant requested the trial court to judicially notice that on November 14, 1995, plaintiff had previously filed a claim with the DFEH against the defendant alleging that she was "denied family care leave in violation of Government Code Section 12945.2" after she went on disability leave. As plaintiff points out, that claim includes her declaration that she received a letter in March 1995 notifying her that she was terminated as of December 29, 1994. Plaintiff contends that "the filing of said complaint was sufficient to place this Defendant upon notice of a possible claim by Plaintiff."
The doctrine of equitable tolling has no application here. As stated in Addison, "courts have adhered to a general policy which favors relieving plaintiff from the bar of a limitations statute when, possessing several legal remedies he, reasonably and in good faith, pursues one designed to lessen the extent of his injuries or damage. [Citations.]" (Id at pp. 317-318, 146 Cal. Rptr. 224, 578 P.2d 941.) In Addison, the court equitably tolled the statute of limitations on the plaintiffs state claim during the time plaintiffs federal court action regarding the same set of facts was pending.[5]
*27 The situation in the present case is entirely distinguishable: plaintiff filed a timely claim with the DFEH alleging unlawful discrimination based on disability, and argues that this gave defendant adequate notice of a potential claim regarding retaliatory discharge. Plaintiff does not explicitly say so, but appears to argue that the statute of limitations for filing her claim regarding retaliatory discharge should be equitably tolled during the period after she filed her first claim with the DFEH. The doctrine of equitable tolling simply does not apply under such circumstances, in which the first claim was not filed in a different forum or involve the pursuit of a different remedy based upon the same set of facts. Indeed, the first claim regarding disability discrimination did not involve the same facts as the second claim for retaliatory discharge. The only doctrine which could arguably apply in this case is that in which a claim regarding unlawful practices which occur after an employee files a first claim with the DFEH could be said to "relate back" to the time of filing the first claim. However, as we next discuss, under the circumstances of this case plaintiff cannot rely on the relation back doctrine to render timely her claim of retaliatory discharge.

III.
Finally, we reject plaintiffs assertion that the present civil complaint should be "related back" to her first administrative complaint filed with the DFEH on November 14, 1995 (which was filed within one year after her December 1994 termination) and in which she alleged she was subjected to discrimination on the basis of disability.
In order to exhaust his or her administrative remedies as to a particular act made unlawful by the FEHA, a claimant must specify that act in his or her administrative complaint, even if the complaint does specify other cognizable wrongful acts. (Martin v. Lockheed Missiles & Space Co. (1994) 29 Cal.App.4th 1718, 1724, 35 Cal.Rptr.2d 181; Okoli v. Lockheed Technical Operations Co. (1995) 36 Cal.App.4th 1607, 1613, 43 Cal.Rptr.2d 57.) However, the scope of a judicial complaint is limited not by the administrative charge, but rather by the scope of the administrative investigation which can reasonably be expected to grow out of the charge of discrimination. (Sanchez v. Standard Brands, Inc. (5th Cir.1970) 431 F.2d 455, 466; see also Okoli v. Lockheed Technical Operations Co., supra, 36 Cal.App.4th at pp. 1615-1617, 43 Cal.Rptr.2d 57.) If an investigation of the administrative charge would necessarily uncover other incidents that were not charged, the latter incidents could be included in a subsequent action.
In this case, we conclude that an investigation of the allegations made in plaintiffs first administrative complaintthat she had been discriminated against on the basis of disability and had been denied a family care leave in violation of section 12945.2would not necessarily uncover that plaintiff felt she had been terminated in retaliation for filing a complaint alleging sexual discrimination against her manager when both were working for a different employer. Plaintiff cannot rely on the timely filing of her first administrative complaint alleging disability discrimination to validate the present judicial action which is based on wholly different allegations regarding retaliatory discharge.

DISPOSITION
The judgment is affirmed.
CURRY, J., concurs.
EPSTEIN, J., Dissenting.
An employee goes on disability leave in mid-November. At the end of March or the beginning of April of the following year she receives a letter from her employer notifying her that she was terminated at the end of December of the previous year. *28 Because she was on disability leave during this entire period she knows nothing about the purported termination until she receives the letter. She believes her termination was taken under circumstances that violate the Fair Employment and Housing Act (FEHA, Gov.Code, § 12940 et seq.; all further statutory citations are to this code except as specified). She files a complaint with the Department of Fair Employment and Housing within one year of her receipt of the letter. Does her complaint satisfy the requirement of the FEHA that a complaint be filed within one year of the alleged unlawful employment occurrence? The answer depends on whether the one year runs from the date of the purported termination, of which the employee knew nothing before being notified, or from the date that she knew, or should have known, of her termination. My colleagues say it is the former. I believe it is the latter. I therefore respectfully dissent.
While principles of estoppel might be invoked under the circumstances of this case, I believe its resolution is based on a more fundamental inquiry: when is an employee terminated? Under normal circumstances, an employee is terminated by being informed of that fact by the employer. If, somehow, a formal communication is lacking, the employee ordinarily will confront signs and signals, such as lack of pay and of work assignments, that unmistakably indicate that the employment relationship is over. It is only in an unusual case that the employee can be credibly heard to claim unawareness of the purported employment action.
This is such a case. In such a case, it is reasonable to require that an employee who claims unawareness of termination plead facts that explain reasonable unawareness. The charging pleading does so in this case.
The case reaches us after dismissal as a result of the sustaining of a demurrer without leave to amend. We must, of course, take all pleaded facts to be true for purposes of review. (Serrano v. Priest (1971) 5 Cal.3d 584, 591, 96 Cal.Rptr. 601, 487 P.2d 1241.) If the complaint alleges any valid claim entitling the pleader to relief, it is sufficient against a general demurrer. (See Gruenberg v. Aetna Ins. Co. (1973) 9 Cal.3d 566, 572, 108 Cal.Rptr. 480, 510 P.2d 1032.) In her charging pleading, appellant alleges that her employer notified her "by letter dated March 31, 1995 that [it] had terminated her employment effective December 29, 1994. Inasmuch as Appellant was on disability leave at the time, this notice was the first communication she received with respect to said termination." She filed a complaint with the administrative agency on March 11, 1996. Fairly read, her complaint alleges unawareness of the termination, purportedly made the preceding December, until receipt of a letter sent at the end of the following March, and the filing of her administrative complaint within one year of that time.
While I find no California case that has directly addressed the point, there is authority under the analogous federal law, title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). (See Mogilefsky v. Superior Court (1993) 20 Cal.App.4th 1409, 1416, fn. 5, 26 Cal.Rptr.2d 116 [appropriate for state court to consider federal cases interpreting title VII].) The title VII cases, as well as cases arising under the Americans With Disabilities Act (ADA; 42 U.S.C. § 12101 et seq.), make repeated reference to the necessity that the employee be notified of the adverse employment action claimed to be unlawful. (See Delaware State College v. Ricks (1980) 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 [title VII case; discrimination occurred "at the time the tenure decision was made and communicated to" the employee]; Smith v. United Parcel Service of America, Inc. (2d Cir.1995) 65 F.3d 266, 268 [title VII case, citing ADA cases; termination occurred when decision made and communicated to employee]; Pearson v. Macon-Bibb County Hosp. Authority (11th Cir. 1992) 952 F.2d 1274, 1279 [title VII and 42 *29 U.S.C. § 1983 case; statute triggered when discriminatory decision, if any, was communicated to employee]; Sharpe v. American Exp. Co. (S.D.N.Y.1988) 689 F.Supp. 294, 297 [title VII case; limitations period began when employee received definite notice of termination]; Hale v. New York State Dept. of Mental Health (S.D.N.Y.1985) 621 F.Supp. 941, 942 [title VII case; similar].)
The majority contend that a requirement that the employee be notified of termination would add an element to the FEHA the Legislature did not see fit to provide. I do not agree. So long as the employee is available to be informed, I believe that in order to be effective, notification of termination must be sent or given to the employee. In fact, the notification of termination ordinarily is the termination. Were this not so, an employer could effectively foreclose an employee who is on long-term disability leave from any remedy under the FEHA simply by entering a notation in the record that the employee is terminated on a particular date, and not informing the employee of that fact until the one year period had passed. That would hardly be consistent with the remedial purpose of the FEHA, in the light of which it must be construed. (See Romano v. Rockwell Internal Inc. (1996) 14 Cal.4th 479, 493, 59 Cal.Rptr.2d 20, 926 P.2d 1114.) That is essentially what happened here, except that the notation was made a few months, rather than a year, before the notification. The FEHA gives the employee a year to file a complaint; the employer cannot properly diminish that time by failing to notify the employee that she has been fired.
The majority supposes that a notification requirement would hamstring an employer if the employee were simply absent without leave. That problem may be addressed when it arises, if it ever does. But there are simple and obvious answers. Notification to the employee's last known address, as shown by employment records, ordinarily should be enough. And an employee who simply goes AWOL cannot reasonably be heard to complain that she or he did not know of an adverse employment action taken as a consequence of the disappearance.
The majority believes the 90-day extension provision of section 12960 forecloses any requirement that the employee be notified of an adverse employment action invoking the maxim, expression unius est exclusion alterius, to argue that the existence of this provision implies a legislative intent that it be exclusive. The provision appends an extension of up to 90 days to the one-year period within which to file a claim, "if a person allegedly aggrieved by an unlawful practice first obtained knowledge of the facts of the alleged practice after the expiration of one year from the date of their occurrence." The majority contends that if notification were required, this provision would be superfluous. Not so. The provision covers the situation in which the employee is aware of any adverse employment action within a year of the time the action is taken, but is unaware of its discriminatory cause. In that situation, the time is extended for up to 90 days. That is a holding of Williams v. City of Belvedere (1999) 72 Cal.App.4th 84, 93, 84 Cal.Rptr.2d 658, on which the majority rely.
In Williams an applicant for employment was rejected and informed of the rejection, but he did not discover the alleged discriminatory basis for the decision until some 16 months after it was made. The court summarized the legislative intent behind the 90-day provision: "Thus the Legislature anticipated there may be situations where a person does not learn he was the subject of discrimination until after the one-year period has passed, and it provided a remedy when that occurs: an extension `not to exceed 90 days.' Since the Legislature has provided a remedy for the problem Williams has identified, we decline to formulate a different remedy." (72 Cal.App.4th at p. 93, 84 Cal.Rptr.2d 658.) Requiring that an employee be notified of termination does not diminish, let alone eliminate, the purpose of the provision.
*30 The majority also claim to find support for its conclusion in the Supreme Court's decision in Romano v. Rockwell Internal, Inc., supra, 14 Cal.4th 479, 59 Cal.Rptr.2d 20, 926 P.2d 1114. As the majority recognizes, the facts in that case are the reverse of those presented here. In Romano the employee was notified that, on a particular future date his employment would terminate. The issue was whether the one-year period ran from the date of notification or the date termination was to be effective. The court held that it was the latter, and in doing so parted with federal cases (many of which I have cited earlier in this discussion) which hold that the time runs from the notification. As our court pointed out, there are differences in language between the state and federal statutes: the FEHA turns on an occurrence (the termination), while the federal law depends on the decision to discriminate. (Id. at p. 498, 59 Cal.Rptr.2d 20, 926 P.2d 1114.) More fundamentally, the court based its decision on the purposes of the FEHA.
The court's conclusion that an employee is not terminated before the employment actually ends is "consistent with the remedial purpose of the [Act] to safeguard the employee's right to seek, obtain, and hold employment without experiencing discrimination." (14 Cal.4th at p. 493, 59 Cal. Rptr.2d 20, 926 P.2d 1114.) It also is congruent with the requirement in the FEHA itself that its provisions be interpreted "liberally in order to accomplish the stated legislative purpose." (Ibid.) To do that, the limitations period "should be interpreted so as to promote the resolution of potentially meritorious claims on the merits." (Id at p. 494, 59 Cal.Rptr.2d 20, 926 P.2d 1114.)
The interpretation the majority advances would be inconsistent with the remedial purposes of the FEHA, as well as the principle that it be liberally construed to achieve those purposes. It would deprive an employee who was justifiably unaware that she had been terminated from pursuing her administrative and, if necessary, judicial remedies, even though she takes action within a year after she knows or ought to know of the termination.
The rule announced by the court in Romano "does not burden employers unduly, because they have control over the date of notification of termination, as well as the date of actual termination." (Id at p. 500, 59 Cal.Rptr.2d 20, 926 P.2d 1114, emphasis added.) Of course, in this case the employer, and only the employer, controlled notification to the employee.
The Romano court closed its discussion with these terms: "To the extent Rockwell may be understood to ask this court to adopt a rule that discourages lawsuits alleging wrongful termination by setting the statute of limitations to run at a time that makes it inconvenient or impossible for the employee to bring a lawsuit, we decline to do so. We do not view the statute of limitations as properly performing such a function." (Ibid)
Nor do I. Nor should we.
NOTES
[*] In denying review, the Supreme Court ordered that the opinion be not officially published. (See California Rules of CourtRules 976 and 977).
[1] All further statutory references are to the Government Code.
[2] More accurately, the defendant is Van Nuys Airport Restaurant Corporation, doing business as 94th Aero Squadron Restaurant.
[3] The Legislature has provided other statutes of limitations that are absolute: Code of Civil Procedure section 337.15 and Corporations Code section 25506.
[4] Although not germane to our analysis, it is ironic that plaintiff filed a complaint with the DFEH on November 14, 1995, for denial of family care leave. This filing was within one year of the December 29, 1994, termination and seven and a half months after plaintiff received the defendant's March 31, 1995, letter. It appears that plaintiff understood the necessity of preserving her claim.
[5] See also, e.g., Bollinger v. National Fire Ins. Co. (1944) 25 Cal.2d 399, 154 P.2d 399 [plaintiff's first action timely filed but erroneously dismissed as premature; new action filed after statute of limitations had expired but court allowed action under general equitable principles]; Elkins v. Derby (1974) 12 Cal.3d 410, 115 Cal.Rptr. 641, 525 P.2d 81 [statute of limitations on personal injury action equitably tolled during pendency of plaintiff's workers' compensation claim].